IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MOHAMED ELMESHAD, individually :
and on behalf of others similarly situated, :
                                                            :
       Plaintiffs, :
                                                            :
v.                                                          :    07-CIV-5990
                                                          :    (CLB)(LMS)
GHT PETROLEUM, INC., GOLDEN TOUCH :
GAS & FOOD, INC., TARLOK SINGH, :
and HARINDER SINGH, :
                                                           :
       Defendants. :


**PLAINTIFF'S BRIEF IN SUPPORT OF APPLICATION FOR PROTECTIVE ORDER,
TEMPORARY RESTRAINING ORDER, INJUNCTION AND SANCTIONS**


Respectfully Submitted

by

Matt Dunn (MD1103)
Dan Getman (DG4613)
Getman Law Office
9 Paradies Lane
New Paltz, NY 12561
(845) 255-9370

COUNSEL FOR PLAINTIFFS

## INTRODUCTION

This is a Fair Labor Standards Act (FLSA) and state overtime and minimum wage back pay case brought as a collective action on behalf of gas station cashiers. All parties represented to the Court on September 21, 2007, that they would negotiate a proposed Collective Action Notice to the class. Just after plaintiffs presented defendants with a draft Notice to review, defendants held a private meeting with most of the class. Defendants had already created a legal affidavit for the group to sign and supplied notaries public for the signing. Either defendants or their attorneys clearly met with the class individually or collectively, and presented them with the prepared Affidavit (Ex. A) which stated:

> We are current and former employees of GHT Petroluem, Inc. And Golden Touch Gas & Food, Inc.
>
> \*\*\*
>
> Under no circumstances will we join in any action against the defendants arising from the defendants purported failure to pay us overtime wages, nor will we agree to sign the attached Notice of Lawsuit With Opportunity to Join, or any other similar notice which seeks to have us join Mr. Elmeshad in pursuing the foregoing lawsuit against the defendants.

Attached to the affidavit agreement not to join was a pre-prepared list of each current or former employee as well as the names of defendants Tarlok and Harinder Singh. Ex. A. It is unclear who personally solicited the signature on the affidavit, or what was said to secure the signatures by the current employees. It is clear from the dates on the agreement that Haridner Singh, a Defendant, signed the document on October 5, 2007 while all the other employees and Tarlok Singh signed the document on the same date of October 22, 2007. That strongly suggests that the current employees were called into a meeting and there made to sign in the presence of defendant

1

Tarlok Singh. It appears that every current employee present that day signed the Affidavit. At this point it is unclear if the current employees were made to sign individually or collectively in each others' presence. Under any scenario, the solicitation of a sworn promise on a "legal document" to an immigrant workforce by the current employer, is inherently coercive. The Affidavit itself recites no benefit promised to or paid to the employees to induce their agreement to forswear their rights.

The only purpose for this agreement is to coerce individuals not to assert their rights in this case. And that purpose has clearly been effectuated by Defendants and their counsel. That purpose is illegitimate under the Fair Labor Standards Act. The signatures were obtained by defendants in a manner that thwarts the recognized authority of the Court to supervise Notice.

Defendants have engaged in coercive unsupervised communications with class members. Through the improper solicitation of the sworn statements Defendants have created the inescapable impression among class members that they are legally unable to join this case. Indeed, defendants have made these individuals "swear" to never join this case. In this motion, Plaintiff seeks 1) to prevent further improper efforts to chill participation in this case; 2) to remedy the harm defendants have already caused; and 3) to sanction those responsible.

## POINT ONE

### COLLECTIVE ACTIONS ARE FAVORED DEVICES TO IMPLEMENT THE REMEDIAL PURPOSES OF THE FLSA

"The principal congressional purpose in enacting the FLSA was to protect all covered workers from substandard wages and oppressive working hours. . . . [and to ensure that employees] would be protected from the evil of 'overwork' as well as 'underpay.'" *Barrentine v.*

2

*Arkansas Best Freight System, Inc.,* 450 U.S. 728, at 739, 101 S.Ct. 1437, at 1444 (1981)(citations omitted). To protect against excessive hours of work, the statute requires that employers pay employees for hours in excess of 40 in a week "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

The FLSA was designed "'to extend the frontiers of social progress' by 'insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.' ... Any exemption from such humanitarian and remedial legislation must therefore be narrowly construed, giving due regard to the plain meaning of statutory language and the intent of Congress. " *A.H. Phillips v. Walling,* 324 U.S. 490, at 493, 65 S.Ct. 807, at 808 (1945).  The FLSA's overtime rules, "like the other portions of the Fair Labor Standards Act, are remedial and humanitarian in purpose. Such a statute must not be interpreted or applied in a narrow, grudging manner." *Giles v. City of New York*, 41 F.Supp.2d 308, 316 (S.D.N.Y. 1999) (quoting *Tenn. Coal, Iron & R.R. Co., et al. v. Muscoda Local No. 123, et al.*, 321 U.S. 590, 64 S.Ct. 698 (1944)).

The FLSA's collective action provisions are an important aspect of achieving the statute's remedial purpose. Section 216(b) of FLSA authorizes any one or more employees to sue an employer for unpaid overtime compensation and liquidated damages on behalf of himself and other employees similarly situated. The procedure, called a collective action, "allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffman Larouche v. Sperling*, 493 U.S. 165, 170-71, 110 S.Ct. 482, 486,(1989).  Sending notice of the action to all similarly situated employees of the action "comports with the broad remedial purpose of the Act, which should be given a liberal construction, as well as with the

interest of the courts in avoiding multiplicity of suits." *Braunstein v. Eastern Photographic Laboratories, Inc.*, 600 F.2d 335, 336 (1979).

## POINT TWO

### A PROTECTIVE ORDER SHOULD BE ENTERED TO PRECLUDE DEFENDANTS FROM FURTHER COERCING OR COMMUNICATING WITH THE CLASS.

It is the job of the Court to safeguard the rights of unnamed and unknown prospective Plaintiffs in this collective action. *See Hoffman-LaRoche v. Sperling*, 493 U.S. 165 (1989); *Belt v. Emcare*, 299 F. Supp. 2d 664 (W.D. Tex 2004). As the *Sperling* Court noted, judicial oversight of the contents of the notice helps protect against misleading communications to potential class members because the court resolves any disputes about the contents of the notice prior to its distribution. *Sperling*, 493 U.S. at 171, 110 S.Ct. at 486-87, 107 L.Ed.2d at 488. As the Eleventh Circuit explained in *Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193, 1203 (1985)(disqualification and $50,000 fine for counsel's advice to Defendant to solicit opt-outs in violation of court order, affirmed), "[u]nsupervised, unilateral communications with the Plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal. The damages from misstatements could well be irreparable." *See also Bower v. Bunker Hill Co.*, 689 F.Supp. 1032, 1033 (E.D.Wash.1985) (recognizing "extreme potential for prejudice to class members' rights" if Defendant was permitted to discuss suit with class members). Further, the solicitation of exclusions from a pending class action by a Defendant constitutes a serious challenge to the authority of the Court to maintain control over communications with class members. *See* 3 *Newberg on Class Actions* § 15.19 (3d ed. 1992). "Unsupervised unilateral communications with

the Plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal. The damage from these statements could well be irreparable." *Kleiner, supra*, 751 F.2d at 1203 *citing Zarate v. Younglove*, 86 F.R.D. 80, 90 (C.D. Cal. 1980). This Court has recognized that "[c]oercion of potential class members by the class opponent may exist if both parties are 'involved in an on-going business relationship,'" and that "[c]ourts have found the danger of such coercion between employers and employees sufficient to warrant the imposition of restrictions regarding communication between defendants and potential class members." *EEOC v. Morgan Stanley & Co., Inc.*, 206 F.Supp.2d 559, 562 (S.D.N.Y. 2002) (Ellis, Magistrate Judge); *see also Bragg v. Terrier Claims Services, Inc., et al.*, 05 Civ. 7280, at 9:10-20 (McMahon, Judge, Nov. 18, 2005)(employer communications with putative class members about pending FLSA lawsuit is prohibited as "inherently coercive"), Ex. B.

Federal Courts routinely prohibit communications which have the potential to mislead, coerce, or discourage class members from joining a suit. *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1206 (11th Cir. 1985); *Hampton Hardware, inc. v. Cotter & Co., Inc.*, 156 F.R.D. 630, 632-33 (N.D. Tex. 1994); *Mevorah v. Wells Fargo Home Mortg., Inc., a div. of Wells Fargo Bank*, 2005 WL 4813532 (N.D.Cal.,2005). And, as explained in *Burrell v. Crown Cent. Petroleum*, 176 F.R.D. 239 (E.D. Tex. 1997), a plaintiff need not show actual harm to justify limitations on a defendant's communications with putative class members; it is sufficient if a plaintiff shows a potential for such abuses. *Id* at 243-244.

Indeed, Judge Colleen McMahon entered a TRO for private agreements discouraging participation by the FLSA class in *Bragg v. Terrier Claims Services, Inc., et al.*, 05 Civ. 7280

(SDNY), at 16:13-25, Ex. B "This is classic intimidation in an FLSA context. Your client has been sued, that's it, it's over. They're not allowed to start messing around with the employees to try to keep them out of the lawsuit. . . . They are precluded from taking any action that interferes with the conduct of this lawsuit or with the ability of the members of the opt-in class, and when certified, the opt-out class, and until certified, with anybody who could be in the class." *Ex. B,* p. 8:9-22, *and see* p.24:6-10.

The principle that a Court should prevent misleading and coercive communication by defendant with the putative plaintiff class has been affirmed in this District in *Bragg v. Terrier Claim Service, supra.,* and in the Rule 23 context in *In re Currency Conversion Fee Antitrust Litigation,* 361 F.Supp.2d 237, 252 (S.D.N.Y. 2005):

> One policy of Rule 23 is the protection of class members from "misleading communications from the parties or their counsel." *Erhardt v. Prudential Group*, 629 F.2d 843, 846 (2d Cir.1980); *see also In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288(DLC), 2003 WL 22701241, at *8 (S.D.N.Y. Nov.17, 2003). That same policy concern applies where a party misleads class members by omitting critical information from its communications. Communications that threaten the choice of remedies available to class members are subject to a district court's supervision:
> A district court's duty and authority under Rule 23(d) to protect the integrity of the class and the administration of justice generally is not limited only to those communications that mislead or otherwise threaten to create confusion and to influence the threshold decision whether to remain in the class. Certainly communications that seek or threaten to influence the choice of remedies are ... within a district court's discretion to regulate.

However, there is no difference between the Court's authority to regulate misleading or coercive pre-Notice communications by defendant with the plaintiff class under Rule 23 or the collective action provisions of the FLSA. *Bragg v. Terrier Claims Svc., supra; Kleiner v. First Nat. Bank of Atlanta, supra; Belt v. Emcare, supra.*

When a defendant unilaterally attempts to defeat the Court's authority to issue effective

6

notice to FLSA class members, the Courts take decisive and comprehensive measures. In *Belt v. Emcare, Inc.,* 299 F.Supp.2d 664 (E.D.T.X. 2003), the Court issued a variety of protective measures and sanctions for an employer's attorneys' *ex parte* communication with members of an FLSA collective action class. In that case, the Defendant's counsel drafted a misleading letter to members of the class concerning the merits of joining the case, in a manner designed to chill participation. As here, Defendants in *Belt* contacted putative class members before the notice was mailed or approved. The Court wrote:

> As in Rule 23 class actions, courts have the authority to govern the conduct of counsel and parties in § 216(b) collective actions. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). Moreover, a court's authority to control counsels' conduct in a § 216(b) collective action includes the authority to "manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." Id. Indeed, because of the potential for abuses in collective actions, such as unapproved, misleading communications to absent class members, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." See *Gulf Oil Company v. Bernard*, 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981).
>
> * * *
>
> Courts have found a need to limit communications with absent class members where the communications were misleading, coercive, or an improper attempt to undermine Rule 23 by encouraging class members not to join the suit. See *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1206 (11th Cir.1985); *Burrell v. Crown Central Petroleum*, 176 F.R.D. 239, 244-45 (E.D.Tex.1997); *Hampton Hardware, Inc. v. Cotter & Co., Inc.*, 156 F.R.D. 630, 632-33 (N.D.Tex.1994). As commercial speech, ex parte communications tending to discourage absent class members from joining the suit may be limited by orders grounded in good cause and issued with a heightened sensitivity for First Amendment Concerns. *Kleiner*, 751 F.2d at 1203; *Hampton Hardware, Inc.*, 156 F.R.D. at 633. Courts examine four criteria to determine good cause in this context: the severity and likelihood of the perceived harm, the precision with which the order is drawn, the availability of a less onerous alternative, and the duration of the order. *Kleiner*, 751 F.2d at 1203; *Hampton Hardware, Inc.*, 156 F.R.D. at 633.

> In considering whether to limit Defendants' speech with absent class members, the Court, as noted above, first determines whether there is a need for limitation on speech and then tailors the limitations accordingly. Thus, the Court first determines whether Defendants' speech is misleading, coercive, or an attempt to undermine the collective action. Then, if the Court finds any basis for restricting the speech, it will tailor appropriate injunctions and sanctions in light of First Amendment concerns.

299 F.Supp.2d at 667-8. The Court then found the Defendants' letter to absent class members misleading and also coercive. *Id. at 668.* "A unilateral communications scheme, moreover, is rife with potential for coercion. "[I]f the class and the class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive." *Kleiner,* 751 F.2d at 1202. The same coercion appears in the "Affidavit" forswearing rights that Defendants solicited here.

The *Belt* Court noted that the only purpose for EmCare's communication was an impermissible one:

> the Court finds that EmCare's letter was intended to undermine the purposes of the collective action by encouraging absent class members not to join. EmCare could have no purpose but to discourage absent class members from joining the suit when it misrepresented damages available and preyed upon the absent class members' fears and concerns. The fact that defense counsel admittedly assisted in the letter's drafting convinces the Court that these misrepresentations were not accidental. Additionally, sending the letter with no notice to Plaintiff or the Court, the day before EmCare was to provide Plaintiff with the potential class members' mailing addresses for the Court-approved notice, persuades the Court that EmCare intended to subvert the Court's carefully crafted notice and its role in administering the collective action.

299 F.Supp.2d at 669.

In this case, the Defendants have systematically undermined the authority of this Court and the well-established procedures for FLSA Notice. They have taken matters into their own hands for the sole and express purpose of preventing the prospective Plaintiffs from making a fair

and informed decision to join or not join this litigation. Improperly attained promises not to sue are precisely the type of conduct that the Court must prevent.[1] Accordingly, the circumstances warrant the issuance of a protective order and corrective action to remedy the abuses of the Defendants. *See Haffer v. Temple University*, 115 F.R.D. 506, 512 (E.D. Pa. 1987) (courts routinely issue restraining orders after parties initiate improper communications with class members); *accord Hampton Hardware, Inc. v. Cotter & Company, Inc.*, 156 F.R.D. 630 (N.D. Tex. 1994). The protection of innocent class members must be of tantamount importance when a Defendant engages in this type of inappropriate conduct.

b.  **A Variety of Remedies are Required to Ameliorate the Impermissible Effects of Defendants' and Counsel's Impermissible Actions.**

The Courts have engaged a variety of sanctions and other orders to try to remedy the harm rendered by defendants' efforts to subvert class remedies. As a remedy for the non-approved *ex parte* letter, the Court in *Belt* enjoined future ex-parte communications, and required a corrective letter on Defendants' letterhead. The Court also sanctioned Defendant by requiring it to bear corrective notice costs and all reasonable attorneys' fees and costs Plaintiff incurred in bringing the motion. The court also reserved the option of allowing class members to opt in to the case, post-verdict as a further sanction, and reserved possible future sanctions. In *Kleiner*, the Court also issued $50,000 in sanctions to defense counsel and disqualified the firm.

Defendants behavior must be remedied in full, though this is not easy to accomplish since individuals who do not wish to join the case for some other reason, are hard to separate from

---

[1] Indeed, agreements not to sue in the FLSA context are legally impermissible. *See Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943, 946 (2nd Cir. 1959). Since the Affidavit (Ex. A) claims to be a legal document committing the signers not to sue, it is inherently misleading.

those who have been coercively or misleadingly chilled from participating. Since individuals cannot be part of an FLSA action without affirmatively opting in, and since it will be virtually impossible for the Court to remedy the employer Defendants' clear communication to employees to chill employees' participation the Court should Order the Temporary Restraining Order. Ex. C

Defendants cannot be permitted to benefit from decreased participation in the case through unlawful means.

### POINT THREE

### A TEMPORARY RESTRAINING ORDER PROHIBITING RETALIATION AGAINST ANY PLAINTIFF NOT SIGNING THE SWORN STATEMENT, OR ACTING IN VIOLATION OF ITS PURPORTED TERMS IS REQUIRED.

Courts routinely issue orders prohibiting misleading and coercive communication between defendants and FLSA putative class members. *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1206 (11th Cir. 1985); *Belt v. Emcare, Inc.*, 299 F.Supp.2d 664 (EDTX 2003); *Hampton Hardware, Inc. v. Cotter & Co., Inc.*, 156 F.R.D. 630, 632-33 (N.D. Tex. 1994); *Mevorah v. Wells Fargo Home Mortg., Inc., a div. of Wells Fargo Bank*, 2005 WL 4813532 (N.D.Cal.,2005). *Burrell v. Crown Cent. Petroleum*, 176 F.R.D. 239 (E.D. Tex. 1997); *Bragg v. Terrier Claims Svc., supra.*

A.     **Plaintiff Meets The Standard for Preliminary Relief**

Where a preliminary injunction is sought to preserve the status quo, a motion for injunctive relief requires a showing that the moving party will suffer irreparable harm absent the injunction and that either (1) the moving party is likely to succeed on the merits or (2) there are serious questions relative to the merits and the balance of hardships tips in favor of the moving party. *McGraw-Hill Companies, Inc. v. Ingenium Technologies Corp.*, 364 F.Supp.2d 352

(S.D.N.Y. 2005); *N. Atl. Instruments, Inc. v. Fred Haber*, 188 F.3d 38, 43 (2d Cir.1999).[2]

> "The standard for granting a temporary restraining order and a preliminary injunction pursuant to Rule 65 of the Federal Rules of Procedure are identical." Spencer Trask Software and Info. Servs., LLC v. RPost Int'l Ltd., 190 F.Supp.2d 577, 580 (S.D.N.Y.2002).
>
> To satisfy the threshold requirement of irreparable harm or injury, a movant need not demonstrate its certainty. *See, e.g., Reuters Ltd. v. United Press Int.l, Inc.*, 903 F.2d 904, 907 (2d Cir.1990) ("a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.") (citation and internal quotation marks omitted) (emphasis added)."Irreparable harm must be shown by the moving party to be imminent, not remote or speculative, and the alleged injury must be one incapable of being fully remedied by monetary damages." *Reuters*, 903 F.2d at 907. The movant is required to establish not a mere possibility of irreparable harm, but that it is "likely to suffer irreparable harm if equitable relief is denied." *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir.1990) (emphasis in original)."Likelihood sets, of course, a higher standard than 'possibility.' " Id.

*Wenner Media LLC v. Northern & Shell North America Ltd.*, 2005 WL 323727 at *3 (SDNY 2005)

1.      **Irreparable Harm**

As this Court wrote in *Wenner Media LLC v. Northern & Shell North America Ltd.*, 2005 WL 323727 at *3 (S.D.N.Y. 2005):

> To satisfy the threshold requirement of irreparable harm or injury, a movant need

---

[2]As this Court noted in *Smith v. Bowers,* 337 F.Supp.2d 576 (S.D.N.Y. 2004): "The Second Circuit has established two different tests for establishing a plaintiff's right to preliminary injunctive relief. The first test, to be applied where a plaintiff seeks a preliminary injunction that maintains the status quo, requires the plaintiff to "establish irreparable harm and either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in its favor." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir.2002). The second, more stringent test, requires the plaintiff to prove a "clear or substantial likelihood of success on the merits." *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 37 (2d Cir.1995). It applies where "(i) an injunction will alter, rather than maintain, the status quo, or (ii) an injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." Id. at 33-34."

>not demonstrate its certainty. *See, e.g., Reuters Ltd. v. United Press Int.l, Inc.*, 903 F.2d 904, 907 (2d Cir.1990) ("a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.") (citation and internal quotation marks omitted) (emphasis added). "Irreparable harm must be shown by the moving party to be imminent, not remote or speculative, and the alleged injury must be one incapable of being fully remedied by monetary damages." *Reuters*, 903 F.2d at 907.

Chilling of First Amendment rights is "irreparable harm." *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"); *Maciera v. Pagan*, 649 F.2d 8, 18 (1st Cir.1981) ("chilling effect" meets "irreparable harm" requirement both in the context of the First Amendment and the LMRDA); *Matthews v. Sutton,* 1996 WL 515221 (E.D.Pa.1996)(injunction prohibiting disciplinary charges against union official running for election).

In *Elrod v. Burns,* the Supreme Court held that an injunction was properly entered where an employer was threatening termination of employees for political reasons. The Court held that prohibiting termination of employees to protect First Amendment rights was appropriate:

>At the time a preliminary injunction was sought in the District Court, one of the respondents was only threatened with discharge. In addition, many of the members of the class respondents were seeking to have certified prior to the dismissal of their complaint were threatened with discharge or had agreed to provide support for the Democratic Party in order to avoid discharge. It is clear therefore that First Amendment interests were either threatened or in fact being impaired at the time relief was sought. The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. *See New York Times Co. v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971). Since such injury was both threatened and occurring at the time of respondents' motion and since respondents sufficiently demonstrated a probability of success on the merits, the Court of Appeals might properly have held that the District Court abused its discretion in denying preliminary injunctive relief. *See Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67, 83 S.Ct. 631, 637, 9 L.Ed.2d 584 (1963).

427 U.S. at 373-4.

Defendants clearly threaten such loss of rights here. *BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516 (2002)("the right to petition extends to all departments of the Government, and that "[t]he right of access to the courts is ... but one aspect of the right of petition."). Access to the courts is a "fundamental" constitutional right. *Bounds v. Smith* 430 U.S. 817, 821 (1977). Absent an injunction, the threat of continued chilling of the First Amendment right to participate in this litigation constitutes irreparable harm.

The Courts have prohibited actions by defense counsel that chill participation in an expected class or collective case. *See Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943, 946 (2nd Cir. 1959) ("an express release by the employee is invalid, and this even though the release is limited to the claims for liquidated damages and was made in settlement of a bona fide dispute").

Notably, Defendants will suffer no cognizable harm if the injunction is ordered.

### 2.    Likelihood of Success.

Plaintiffs are likely to succeed on the merits. Defendant is an employer subject to the FLSA and state labor law protections. Defendants failed to pay their cashiers time and one half overtime premium, even though there are documented records showing they worked overtime hours. Ex. D. Defendant also failed to pay the prevailing New York State minimum wage.  Ex. D. There is no exemption applicable to these employees. There is no valid defense to federal and state overtime requirements to pay for all hours and time and one-half for these Plaintiffs.  The Plaintiff is also likely to succeed on some form of notice being approved.  *See Docket No. 25, Scott v. Mallory-Kotzen Tire Co., Inc.*, 03 Civ 9937 (Robinson, J., Dec. 21, 2004); *Hoffman v. Sbarro, Inc.*, 982 F.Supp. 249 (S.D.N.Y.1997).

Defendants have indicated to the Plaintiff class that they must renounce going to court to

collect overtime. This statement was in writing. It was prepared by defense counsel. It was delivered by the Defendants to the class. Plaintiffs are likely to prevail on the merits of their claim, or alternatively, there are serious questions relative to the merits and the balance of hardships tips in favor of the moving party. Uncorrected, Defendants' actions will result in irreparable harm. No cognizable harm will ensue to Defendants from entering an injunction.

**CONCLUSION**

Defendants and their counsel have engaged in improper efforts to chill the participation of the class in this case. Defendants are impermissibly attempting to subvert the Court's authority and duty to manage collective action litigation. The Court should enter a temporary restraining order, as requested in Exhibit D.  Further, this Court should enter a broad injunction that remedies the variety of ways in which Defendants' actions have unlawfully and extrajudicially advanced goals of limiting their liability.  This court should:

1. Enjoin any effort by Defendants or their counsel to chill participation in this case, including prohibiting any further communication concerning joining the case, except as approved by the Court;
2. Enjoin retaliation by Defendants against any individual participating in this case;
3. Allow plaintiffs to take full and effective discovery of all participants in the defendants' securing of signatures on the Affidavit by deposition conducted at defendants' expense.
4. Direct prompt and hand delivered notice to all class members of the impropriety and invalidity of the sworn statements;
5. Equitably toll the statute of limitations for federal FLSA claims for the same amount of time during which individuals would have believed they could not opt-in to the FLSA

claim.

6. Sanction the Defendants monetarily, including fine the Defendants an amount equal to what liquidated damages would have been, so that the Defendants do not achieve any of the benefit of chilling individuals from opting-in to this case;

7. Reserve the opportunity for individuals to join the case post-judgment;

8. Award Plaintiffs' costs and attorneys' fees for the time spent on this motion.


Dated: October 29, 2007

Respectfully Submitted,


  /s/ Matt Dunn
Matt Dunn (MD1103)
Dan Getman (DG4613)
Getman Law Office
9 Paradies Lane
New Paltz, NY 12561
(845) 255-9370

ATTORNEYS FOR PLAINTIFFS