# EXHIBIT B

69ROMANC                    Conference

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   PATRICK MANLEY, et al,

4                Plaintiffs,

5           v.                          04 CV 8606 (AJP)

6   AMERICAN HOME MORTGAGE
    INVESTMENT CORPORATION,
7
                Defendant.
8
    ------------------------------x
9                                       New York, N.Y.
                                        September 27, 2006
10                                      2:35 p.m.

11  Before:

12                  HON. ANDREW J. PECK,

13                                    Magistrate Judge

14                  APPEARANCES

15  DAN GETMAN
        Attorney for Plaintiff Manley
16
    JACKSON LEWIS
17      Attorneys for Defendant American Home Mortgage
    BY: WENDY J. MELLK
18

19

20

21

22

23

24

25

69ROMANC                         Conference

1         (In open court)

2         THE COURT:  I received a letter from Mr. Getman dated

3    September 26th with respect to discovery issues that you plan

4    to raise today or thought to be raised today.  I have not

5    received the response, correct?

6         MS. MELLK:  Yes, your Honor.  In fact, I did not see

7    the letter until today, until right now.  Mr. Getman and I had

8    discussed some of those issues, so I am prepared to go forward.

9    Part of Mr. Getman's letter was engendered by a request I made

10   to Judge Koeltl to serve fact base interrogatories on the

11   opted-in class members.

12        THE COURT:  How did you make that request?

13        MS. MELLK:  I made a written application and I thought

14   that I had it in my packet of material, but I don't.

15        THE COURT:  Regardless, I don't know why it was going

16   to Judge Koeltl, but even importantly --

17        MS. MELLK:  It was before.

18        THE COURT:  Because, otherwise, not only would it go

19   to me, but even if it was something properly in front of him my

20   rules require courtesy copies.

21        MS. MELLK:  It was made prior to the time.

22        THE COURT:  That is probably why he referred the

23   matter to me. So is this discovery request a live one or not a

24   live one?

25        MS. MELLK:  Basically at this juncture, so I can fill

69ROMANC                    Conference

1   you in, we have provided Mr. Getman's office with close to

2   5,000 pieces of paper, the personnel files, all of the

3   information that we have.  I spoke with Mr. Getman yesterday

4   and he believes that we have not given him information

5   regarding the commission payments.  I have spoken with my

6   client.  They're going back and checking again.

7            THE COURT:  When you say you produced documents, is

8   there electronically-stored information; that is, ESI as the

9   new rules call it?

10           MS. MELLK:  We have printed everything that we have

11  out.  So we have given him everything that we have in our

12  database.  To the extent that we find anything that is

13  electronically stored, we will certainly provide it to

14  Mr. Getman.

15           Mr. Getman also subpoenaed records from ADP, which we

16  have not objected to, and I think that may moot a lot of -- if

17  we can't find our commission report because he's going to get

18  the data he needs.

19           THE COURT:  You might, by the way, even though you are

20  not objecting to it, you might want to tell ADP that so they

21  don't object merely because they think he was their client and

22  want them, too.

23           MS. MELLK:  Well, I will communicate that to my

24  clients.  In terms of where the defendants are, we had served

25  document production requests -- the opt-in period closed in

69ROMANC                          Conference

1  February, we were involved in that.  We served document

2  production requests.  We agreed with Mr. Getman to hold those

3  requests in abeyance while we once again visited the issue of

4  resolution.  Obviously, we're still not at resolution although

5  we talk about it amicably, and hopefully one day we will get

6  there now that we have a firm discovery schedule.  Discovery

7  needs to be complete by the end of January.

8           I have made an application to Judge Koeltl to serve

9  fact-based interrogatories on the 76 opt-in plaintiffs.  We

10 believe that is the most efficient way to gain preliminarily

11 information primarily regarding the number of hours worked.  As

12 your Honor may recall, this is a claim for overtime.  To some

13 extent, I believe, there is a claim for minimum wage, although

14 I disagree with that.  It's a claim for overtime aimed at

15 American Home Mortgage and their loan officers employed in

16 their mortgage select unit.

17          Since there is only 76 opt-ins, we think that

18 fact-based interrogatories, and think I actually got a draft,

19 although I'm not prepared to give it to the Court yet.  We

20 would tailor those to be very simple in lay language to get the

21 information that we need so we can assess our case to determine

22 whether individuals are similarly situated so we can get a

23 sense of what people worked.  There are 76 opt-ins and 220, 230

24 entire class members.  We are only asking that we serve the

25 fact-based interrogatories on the opt-ins, and then once we get

69ROMANC                    Conference

1    the information from those interrogatories, we would like to

2    take depositions of individuals that we select based upon

3    responses from the interrogatories.

4         THE COURT:  I guess the question is this, and

5    fortunately we are dealing, if your numbers are right, with a

6    somewhat circumscribed class.  Nevertheless, you know, the case

7    law is legion that you don't get discovery at this stage of the

8    case from absent class members.

9         So what is the great benefit of getting it from 76

10   opt-ins who are part of the class but for FSLA and labor law

11   because this is a mixed federal and state case, they also had

12   to opt-in?

13        MS. MELLK:  The benefit is, first of all, they worked

14   in two different places.  They worked at different times.  If I

15   am limited to, just as Mr. Getman would want, the ten named

16   plaintiffs, those are the individuals who believe that they

17   were wrong and who have the most interest in litigating this.

18   I'm not going to get a clear picture of really what the

19   opt-ins --

20        THE COURT:  If you are saying based on the information

21   you know a limited number of the opt-ins should be deposed or

22   interrogated through interrogatories to show that they're

23   different than the ten class reps or something, frankly, I

24   think you can do that based on your records or your knowledge

25   that Mr. Homes worked at this unit while the class reps worked

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

69ROMANC                       Conference

1    at different units.

2              MS. MELLK:  Your Honor, what I'm proposing is not

3    particularly onerous, to send out a relatively simple

4    questionnaire under oath, and that is why I'm calling it

5    interrogatories, to the 76 plaintiffs, asking them the hours

6    that they worked, when they worked.

7              THE COURT:  The first step down a slippery slope

8    because I have seen this before.  Then 20 of them don't respond

9    or 30 of them respond but because they're doing it on their

10   own, unless Mr. Getman has to spend a fortune dealing with all

11   of them, then you come back and say, Judge, I asked you to

12   dismiss the case of Mr. Moriarty because we sent him the

13   interrogatories and Mr. Getman called him four times and wrote

14   three letters to follow up, we never heard back from Moriarty.

15   That does not seem to be the best way to do this.

16             Now, admittedly, it may be that this is premature and

17   when I see your interrogatories, if you don't finally resolve

18   the issue today, that it may be, you know, simple enough check

19   off a box here or there.  But I fear if it's -- and I forget

20   how long the request period is, a period that they're opt-ins

21   for, to the extent that, you know, for every week that you

22   claim you worked overtime, give me the following information.

23             Did you work Monday?  What did you do during these

24   hours?  Where were you?  I can see this as a parade of

25   horribles.  I can see a very simple one or two questions, one

1   that might not be a problem, but in general I would say that

2   even if I don't rule on this today, and subject to you showing

3   me any case law to the contrary, I am against it at this stage.

4          To the extent you want to go beyond your 10

5   depositions because there are 10 named plaintiffs and you want

6   to take two, three, five extras from the opt-in group because

7   you think they're different, so be it.

8          MS. MELLK:  Your Honor, I will tell you that several

9   of the named plaintiffs, Mr. Getman and I spoke about it, we

10  believe may have worked much more than the group, and so

11  therefore are not representative of the group, and we do not

12  want to be limited to taking these individuals' depositions.

13         THE COURT:  Time out.  Let me just back up.

14         The class has been served?

15         MS. MELLK:  Correct.

16         THE COURT:  So issues that they're not similar in

17  terms of certification under Rule 23, the Court can always

18  reexamine that issue.  That doesn't strike me as getting us

19  anywhere.  As to recovery and damages, it is traditional in all

20  class actions -- and I don't see why this hybrid action should

21  be any different -- that if liability is proven as to the class

22  reps that an appropriate procedure will need to be adopted. We

23  won't just say the 10 class reps all worked, you know, ten

24  extra hours of overtime every week, so that is what everybody

25  gets.  But as with the standard proof of claim or discovery at

69ROMANC                        Conference

1    that point from certainly the opt-ins, if not the entire class,

2    there may need to be procedures to say, okay, did you work as

3    much as the named plaintiffs?

4            MS. MELLK:  Your Honor, under 216(b) this is a hybrid

5    as you said.  We are permitted to, prior to the time of trial

6    at the close of discovery, make a motion to the court

7    indicating that the individuals are not similarly situated and

8    therefore this should not proceed as an opt-in 216(b) class

9    action.  I can't make that determination by just the

10   information from these 10 opt-in plaintiffs.  I need to be able

11   to get information from the opt-in.  I am willing to --

12           THE COURT:  The case law Mr. Getman cites basically

13   says no.  This may be one because you didn't see the letter and

14   didn't have a chance to give him contrary case law that this is

15   something we should put a pin in, and maybe your questions will

16   be sufficiently easy for a lay person without a lot of

17   hand-holding by Mr. Getman to respond to, that maybe he will

18   withdraw his objection or he will pare the list down and

19   negotiate it.

20           At this point, I am disinclined to anything

21   complicated going out to the 76 opt-ins, and particularly

22   disinclined to the use of interrogatories, which really puts

23   the expense and burden on Mr. Getman and the opt-ins as opposed

24   to you.  You write one generic set of questions and it gets

25   mailed out and Mr. Getman has to do all of the follow-up and

69ROMANC                        Conference

1  make sure they respond, and review their responses and go back

2  to them and say, you know, you didn't understand the question,

3  etc.  And it might be that if you convince me discovery is

4  appropriate, then I will say -- I guess I will eliminate the

5  ten-deposition rule entirely and say if you want to take 76

6  depositions, be my guest.

7         At this point I'm suggesting you rethink what you

8  want, how you want to go about it, and whether you need all 76

9  opt-outs or whether a sampling of them, at least in the first

10  instance without prejudice to you then, saying based on the

11  sample, I need to go further.  I'm not inclined to huge

12  interrogatories or a single question, but the answer which

13  requires a huge amount of data, particularly to the extent that

14  you may well have at least what is in your records as to how

15  much these people work or didn't work.

16         Now, obviously they're saying to some extent that the

17  employers' records are not accurate, and that is typical in

18  these cases.  Nevertheless, I think you can decide who are the

19  ones you want to attack without doing interrogatories to all 76

20  or without doing extensive interrogatories to all 76.

21         MS. MELLK:  Your Honor, I respectfully request that I

22  be allowed to respond in writing to Mr. Getman's written

23  letter, and I will provide you with my response and if my

24  response --

25         THE COURT:  What I am going to do at this point is to

69ROMANC                    Conference

1   say, the issue is left for either side after a further confer

2   to readdress the Court.  I don't want a response to his letter

3   in the abstract.  I want you to give him a draft of what the

4   interrogatories are and how many people you want it sent to, as

5   well as -- and talk to him and say, you cited these cases out

6   of various places outside of the Southern District, but Judge X

7   of the Southern District did X and why aren't you following

8   that.

9         After the two of you resolved it, you don't have to

10  give me anything, and if the two of you don't resolve it, then

11  I expect a letter from you responding to his letter attaching

12  your interrogatories telling me what you and he agreed upon or

13  not agreed upon, and then Mr. Getman can respond to that in

14  short order.

15        All right.  So that takes care of number one on this.

16  I'm not sure, 2B working backwards or in the middle, is that

17  issue something we should just hold off on until after ADP

18  responds?

19        MR. GETMAN:  Your Honor, I think Ms. Mellk in her

20  introduction was speaking to that issue and she said the

21  defendant was going to check.  To the extent these documents

22  exist, either in hard copy or digital form somewhere, we do not

23  believe that the ADP records will contain this specific

24  information and calculation.  We do -- based on our having seen

25  the pay statements, we know that ADP has a commission total.

69ROMANC                    Conference

1   But what the calculation sheet itself has is, a draw, a draw

2   recoupment against calculations, etc. etc., and some of those

3   issues go to liability as well as damages.  So these records

4   will be important, apart from ADP, but I hear that they are

5   looking for them.

6            THE COURT:  The other thing, just to make specific

7   what I asked about before, while the December 1, 2006

8   amendments to the Federal Rules are not yet officially

9   effective.  In many ways they are a codification of the

10  Zubulake decision from Judge Scheindlin in this court --

11           MS. MELLK:   Which we take seriously, your Honor.

12           THE COURT:  -- and I do expect you will all, if you

13  have not already, sit down now and talk about what you have

14  produced in paper form as a printout.  It would be better

15  produced on a CD-ROM or other electronic form, and whether all

16  electronic sources of information have been searched for the

17  various categories of things that were requested under the

18  "documents."  That goes to both sides.  To the extent any of

19  the plaintiffs have information on a laptop or anything else,

20  that will be covered by any of the defendants' requests.

21           Next, Roman Numeral II(c) on page five, whether the

22  defendant is an enterprise engaged in commerce.

23           MS. MELLK:  Mr. Getman named two defendants, American

24  Home Mortgage Investment Corporation and American Home Mortgage

25  Corporation.  I believe one of them, and I'm not -- I think

69ROMANC                        Conference

1  it's the investment corporation is merely a holding company, is

2  not an appropriate defendant and not engaged in commerce.  I

3  certainly -- and I will provide Mr. Getman with the appropriate

4  defendant and, you know --

5          THE COURT:  I guess I would say you need to stipulate

6  or admit that whichever is the right one is engaged in

7  commerce, and then if you are arguing the other is a holding

8  company and therefore not engaged in commerce, then he will

9  either agree to that or, if not, presumably, you will cite him

10 to some case law that said something that a mere holding

11 company is not engaged in commerce, or if that issue has not

12 yet been definitively ruled upon at least in the circuit, then

13 to the extent that he wants discovery about what the holding

14 company does, and what else might be necessary to prove that

15 it's covered by the engaged and commerce statutory language.

16 Again, I don't have the requests in front of me.  I just have

17 the letter.  So I don't know if the requests were good or bad,

18 but obviously the concept is, if that is something that you are

19 denying, he is entitled to get information to prove.

20         MS. MELLK:  I understand that, your Honor.  Hopefully,

21 Mr. Getman and I can work out who the appropriate defendant is

22 and that issue will be moot.  My understanding is that the

23 appropriate defendant is engaged in commerce under the law.

24         THE COURT:  If you two can resolve it through that

25 sort of agreement, that is fine.  Otherwise, you know, whatever

69ROMANC                    Conference

1    one you are denying it on he is entitled to this discovery.  In

2    general, as to whether the specific requests are good or bad,

3    I'm not going to rule on that at this time because I don't have

4    the requests and even though I saw Mr. Getman reach for

5    something --

6              MR. GETMAN:  I would be happy to give you it.

7              THE COURT:  I don't see the need because as to one of

8    the two you agree that you will stipulate to, you will just

9    have to remember which two defendants it is.  As to the other

10   one, we will talk about it, A or B.  If they all worked for the

11   operating company and the holding company is being sued as a

12   parent, you will figure out what the appropriate way to handle

13   all of this is.  If not, you will come back to me.

14             Okay.  Now I guess we have come to the good faith

15   assertion and I may need to see the document request and

16   responses on this, but I guess I will ask in general, is your

17   good-faith defense based on advice of counsel?

18             MS. MELLK:  I do not believe so, your Honor.

19             THE COURT:  And is there --

20             MS. MELLK:  And I do not believe there are any

21   documents --

22             THE COURT:  Is this one of these law school

23   hypotheticals where you objected?

24             MS. MELLK:  I don't believe there are any such

25   documents.  The request for production of documents are

69ROMANC                          Conference

1   incredibly broad.  They relate to the entire company.  So we

2   objected -- I mean, the document production request --

3            THE COURT:  In general, I don't want to look like I'm

4   talking everything today, but if you are withholding

5   anything --

6            MS. MELLK:  It is my understanding --

7            THE COURT:  -- then it has to be on a privilege log.

8   If you are just making a general -- the usual, we object to

9   this, that and the other, and we object to anything privileged,

10  then the traditional lawyer's next sentence, without waiver of

11  these objections, we are producing X or without waiver of these

12  objections there are no such documents.

13           If there are any documents withheld as privilege on

14  this issue or any other issue, log them, I'll give you a

15  deadline for that in a minute, and then with the universe

16  known, we can fight about whether they are privileged or

17  whether the privilege is waived or anything else.  And,

18  frankly, the privilege log obligation goes to plaintiff as

19  well.  It is not a one-way street.  The rules require it, the

20  federal rules, the local rules, etc.

21           How soon can you both do your privilege logs?

22           MR. GETMAN:  Your Honor, we're not aware of there

23  being any privilege log with respect to --

24           THE COURT:  So you have not withheld any on the basis

25  of privilege?

69ROMANC                    Conference

1          MR. GETMAN:  Right.

2          THE COURT:  Defense?

3          MS. MELLK:  With respect to the good-faith defense, my

4    understanding is there are no documents, privileged or

5    otherwise, that we have withheld, and I will certainly go back

6    to my client and ask again.

7          THE COURT:  By a week from Friday can you reconfirm

8    that and also do a privilege log for anything in response to

9    the at least 28 requests, whether on this subject or any other,

10   and log anything withheld on the basis of attorney/client or

11   work product or any other privilege.

12         MR. KLUGER:   Can I get an extra week?  I will be out

13   of the country.

14         THE COURT:  Mr. Getman, is that okay with you?

15         MR. GETMAN:  That is acceptable.

16         THE COURT:  Then it's acceptable to the Court.

17         MS. MELLK:  That is October 13th?

18         THE COURT:  Yes, correct.

19         Okay.  That, I think, takes care of everything in

20   Mr. Getman's letter.  Anything else from the plaintiff's side

21   Mr. Getman?

22         MR. GETMAN:  No, I think that is it, your Honor.

23         THE COURT:  Ms. Mellk, anything from your side at this

24   point?

25         MS. MELLK:  Not at this time.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

69ROMANC                    Conference

1          MR. GETMAN:  I will say this, I thank your Honor for

2     the recognition of some of the difficulties with the

3     interrogatories.  I don't want to revisit the issue because I

4     know to shut up, but sometimes they're just phenomenally

5     difficult dealing with lay people.  So I appreciate that.

6          THE COURT:  Understood.  And that is something, on the

7     other hand, they did choose to opt-in.  So at some point they

8     will have an appropriate obligation, the question will be when.

9          MS. MELLK:  Your Honor, if I may just make the point.

10    My client is the one who is being sued and who has to go out

11    and retain counsel for what they believe is a case that does

12    not have any merit.  So the fact -- it concerns me that the

13    Court is very concerned with what the plaintiffs have to do but

14    there is no recognition of the defense.

15         THE COURT:  You missed the point.  The ten named

16    plaintiffs interrogated by interrogatories, document requests,

17    private investigators.  They're the named plaintiffs, they're

18    on the hook.  The question is, what happens to those beyond

19    that?  I recognize that they opted in, but --

20         MS. MELLK:  But, your Honor, as you said before,

21    Mr. Getman and I will try and work it out.

22         THE COURT:  Having probably spent more of my time as a

23    defense lawyer than a plaintiff's lawyer, although I did

24    represent both but not in labor cases, thanks to the ABA

25    employment rates and responsibilities committee, as well as my

69ROMANC                    Conference

1  case load, I have become very familiar with various employment

2  issues.  I'm cognizant of both sides' problems and concerns,

3  but on the one issue that was put in front of me, I think that

4  it is very problematic dealing with people who opted in but who

5  are essentially unrepresented and do not have a relationship

6  with Mr. Getman.  Once you start sending things out to them and

7  they don't respond, it starts creating -- there is no way you

8  are going to let them not respond, and, therefore, you are

9  going to move to dismiss, or move for sanctions, etc., etc.  So

10  I want to make sure if you are doing this, you are doing it in

11  the most appropriate way and at the appropriate time, which may

12  be later in the litigation more fully versus now or less fully

13  or now not at all.  But I don't think you want me to say

14  anything more on this issue.

15          MS. MELLK:  I don't.  I support your earlier ruling

16  and I'll deal with it that way.

17          THE COURT:  Now, in light of when you think you will

18  get this teed up, when do you want to come back?

19          Normally, I would say the next conference will be a

20  month to month and a half, and obviously you all know my rules.

21  If you have got an "emergency," that means anything you think

22  needs to be decided to keep discovery moving, but before the

23  next scheduled conference, subject to my calendar and trials

24  and criminal duty.  I'm perfectly happy to just have you come

25  in on that basis.

69ROMANC                         Conference

1        But we should set some next conference date, whether

2    it's earlier, assuming this probably will get teed up by then

3    and/or later, hoping that it will resolve itself.

4        MS. MELLK:  I am hopeful that Mr. Getman and I can

5    resolve it.  If we don't, certainly I will respond in writing

6    to the Court and then we can set a conference.  I imagine you

7    would set a conference sooner rather than later to discuss that

8    issue.  So I don't have a problem scheduling a conference in

9    November, you know, rather than scheduling one in the next two

10   weeks when I won't be around.

11       THE COURT:  You should have said that first.  End of

12   November we hit Thanksgiving.

13       MS. MELLK:  I would like to have one at the halfway

14   mark.  Discovery needs to be closed by the end of January.

15       THE COURT:  I was starting to look at the period

16   around November 16th or 17th.

17       MS. MELLK:  Not the 17th.  It's actually my birthday.

18   It's a big birthday and I have to go into hiding.  The 16th

19   would be fine.

20       THE COURT:  Come on the 17th, you might get a birthday

21   present.  The 16th is fine, 10 a.m.  Does that work?

22       MR. GETMAN:  Yes, it does.

23       MS. MELLK:  Ten a.m., that is fine.

24       THE COURT:  Usual drill.  I will require you, unless

25   you have any economic or other objections, to purchase today's

69ROMANC                    Conference

1   transcript.  Any problem with that?

2          MS. MELLK:  No, your Honor.

3          Mr. Getman is always very concerned with my client's

4   pockets.

5          THE COURT:  Remember that next time it's his turn,

6   maybe even the next two times.

7          MR. GETMAN:  If it turns out to be my turn, just let

8   me know.

9          THE COURT:  I guess at this point it is also good to

10  remind you, as I traditionally do at first conferences -- and

11  this is the first conference and new referral -- that the

12  parties do have the option, pursuant to 28 U.S. Code Section

13  636(c) to agree to complete reference in the case to me on a

14  dispositive basis for direct appeal to the Second Circuit.  Or

15  for those who want to reserve their trial rights and go back to

16  Judge Koeltl to have all pretrial aspects, including motions,

17  go before me on a dispositive basis or a trial issue deferred

18  or any other pieces of the case that you want before me on a

19  dispositive basis, whatever you stipulate to can happen.  It

20  obviously requires two to tango here.  If one or the other or

21  both of you say no thanks, Judge, then you are in front of me

22  for general pretrial supervision, but back in front of Judge

23  Koeltl for dispositive matters and trial.

24          I assume you each need to talk to your client, so I

25  will ask you to think about it and get back to me on that issue

69ROMANC                    Conference

1   at the next conference.  And preferably do it on a

2   grammatically correct neutral basis that says the parties do

3   not consent as opposed to, I consented but he/she didn't.  If

4   one of you slips and tells me that, frankly, I don't care.  No

5   one gets demerits or brownie points.  Either you are with me

6   for pretrial supervision and back to Judge Koeltl at the end of

7   the day, or you are with me for all purposes.  Doesn't matter.

8           Okay

9           MS. MELLK:  Thank you, your Honor.

10          MR. GETMAN:  Thank you.

11                              o0o

12

13

14

15

16

17

18

19

20

21

22

23

24

25