**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
—————————————————————

**MOHAMED ELMESHAD, individually and on**
**behalf of others similarly situated,**

**Plaintiffs,07 CIV 5990**
**(CLB)(LMS)**
**-against-**

**GHT PETROLEUM, INC., GOLDEN**
**TOUCH GAS & FOOD, INC., TARLOK**
**SINGH, and HARINDER SINGH,**

**Defendants.**
—————————————————————

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR**
**PROTECTIVE ORDER, TEMPORARY RESTRAINING ORDER, INJUNCTION,**
**DISCOVERY, AND SANCTIONS**

Respectfully submitted,

Greenwald Law Offices
Attorneys for Defendants
Gary Greenwald [GG 4605]
99 Brookside Avenue
Chester, New York 10918
(845) 469-4900

## STATEMENT OF FACTS

Plaintiff, Mohamed Elmeshad (hereinafter "Plaintiff"), commenced this Fair Labor Standards Act (hereinafter "FLSA") action against his purported former employers, GHT Petroleum, Inc., Golden Touch Gas & Food, Inc., Tarlok Singh, and Harinder Singh (hereinafter "Defendants") alleging that Defendants had failed to pay him time and one-half for overtime hours allegedly worked by him.

Defendants have alleged that Plaintiff did not work for any of the Defendants other than GHT Petroleum, Inc. and have alleged numerous other defenses, including that Plaintiff provided false and fraudulent time cards in order to exaggerate the number of hours worked by him. Defendants allege that, while Plaintiff allegedly was "on the clock" for Defendant GHT Petroleum, Inc.'s convenience store, Plaintiff was simultaneously conducting his own personal used car business out of that convenience store, without his employer's permission.

Plaintiff seeks to certify a class consisting of cashiers who worked for Defendants in excess of 40 hours during any pay-week.

However, soon after this action was commenced by Plaintiff, Plaintiff apparently contacted one or more of Defendants' employees in an effort to convince them to join the class of party Plaintiffs.

The supporting Affidavits of Defendant Tarlok Singh and Haisam S. Ghazali are attached hereto.

As appears from those Affidavits, in or about August 2007, Haisam S. Ghazali, an employee of Defendant GHT Petroleum, Inc., was contacted by Plaintiff with respect to the within action.

2

Plaintiff contacted Mr. Ghazali in an apparent attempt to "influence him to join this action as a Plaintiff."

Mr. Ghazali indicated that he had advised Plaintiff that he would not join the action and he reiterated this to Defendants thereafter.

Mr. Ghazali subsequently recounted his conversation with Plaintiff to Defendant Tarlock Singh.

Upon information and belief, as a result of Plaintiff's conduct, any employees who were not aware of the existence of Plaintiff's action, or of Plaintiff's desire to have existing employees join the action, most certainly became aware of these things. Upon further information and belief, as a further result of Plaintiff's conduct, the employees discussed Mr. Ghazali's refusal to join the action and apparently agreed with him.

Moreover, Plaintiff's communications with the employees continues to this date and continues to influence the putative class members. In his Affidavit, Mr. Ghazali confirms that Plaintiff periodically contacts him regarding the progress of this action and that Plaintiff even advised that he had been offered the sum of $30,000, an obvious attempt to induce Mr. Ghazali to join this action so that he could likewise receive a windfall settlement.

This communication has spilled over to other putative class members, since Mr. Ghazali was overheard discussing the $30,000 settlement offer with another putative class member, Shaban R. Abdel-Hafez. Since the settlement offer was not communicated by Defendants to these employees, it must have been communicated by Plaintiff to these employees.

3

As a result of Plaintiff's conduct, Defendants sought to determine whether Plaintiff had contacted any other employees of Defendants and whether Plaintiff had been successful in influencing these other employees to join the class sought to be certified by Plaintiff.

In doing so, Defendants confirmed that, in addition to Mr. Ghazali, none of their employees had any intention of joining the action. In fact, most of Defendants' employees were family, friends, or social acquaintances and would not have joined in the action for that reason alone.

In addition, none of the three or four existing employees who were not related to Defendants, or who were not friends or social acquaintances of Defendants, expressed any interest in joining the proposed class either.

In a settlement meeting held between counsel for Plaintiff and counsel for Defendants on August 27, 2007, Defendants' counsel, David A. Brodsky, advised Plaintiff's counsel, Matt Dunn, that Plaintiff allegedly had been contacting Defendants' employees to solicit their involvement as party plaintiffs to the action. Mr. Dunn did not deny his client's involvement in soliciting Defendants' employees and did not deny knowing about his client's involvement in soliciting Defendants' employees.

Moreover, Mr. Dunn did not agree or offer to do anything to curtail this solicitation by his client and, based upon Mr. Ghazali's Affidavit, to this date, apparently has still done nothing to deter his client's communications with putative class members. Nor did Plaintiff's attorney offer to ameliorate the impact of Plaintiff's communications with putative class members.

At the same settlement conference, Defendants' counsel also advised Plaintiff's counsel that Defendants had received feed-back from Defendants' employees that none of those employees apparently intended to join Plaintiff's purported class. Defendant's counsel also advised that most

4

of Defendants' employees were friends or relatives of Defendants in any event and would not likely opt in because of their relationship with Defendants.

At that time, Plaintiff's counsel did not inquire into the circumstances of the communications between employees and employers, did not raise any concerns regarding the circumstances of the communications, and did not voice any objection to the communications. In fact, Plaintiff's counsel said nothing to indicate that the communications were objectionable or that the communications should be discontinued or limited in any respect.

During numerous subsequent settlement communications between Plaintiff's attorney and Defendants' attorney over the ensuing two months, the parties' attorneys continued to discuss the employees' apparent lack of interest in joining the class and Plaintiff's counsel continued to voice no objections to the communications in any respect, nor did Plaintiff's counsel suggest that these communications should be discontinued or limited in any respect.

Thereafter, in or about October 2007, Defendants obtained an Affidavit signed by Defendants' employees, which manifested the previously stated intentions of Defendants' employees. However, the Affidavit expressly recited that it was signed only after each affiant had reviewed the Notice of Lawsuit With Opportunity to Join which had been annexed - the very same Notice of Lawsuit With Opportunity to Join, which had been expressly proposed by Plaintiff's attorney and which Plaintiff's attorney had represented to be in a form previously approved by this Court, i.e. the proposed Notice was in the same form which Plaintiff believed this Court would approve and would accurately apprise employees regarding this action.

Because each of the affiants acknowledged having read the proposed Notice, they each were apprised of the nature of the action, the right to contact Plaintiff's attorney, and the right to opt-in to the action.

In addition, the proposed Notice itself expressly stated that no employee could be subjected to retribution for joining the class proposed by Plaintiff.

In effect, the Affidavit did nothing more than manifest the intention of Defendants' employees, of which both Defendants, Defendants' attorney, Plaintiff, and Plaintiff's attorney already had been apprised.

Nonetheless, despite the fact that the employees' stated intentions had been communicated in or about August 2007 to Defendants, Defendants' attorneys, and Plaintiffs' attorneys, Plaintiff took no action thereafter for nearly two months.  Only after Defendants obtained the foregoing Affidavit, which manifested these previously stated intentions, did Plaintiff interpose any objection to the communications between Defendants and their employees, by bringing the within motion.

For the reasons set forth herein, that motion respectfully must be denied or, to the extent it is not denied, any relief granted to Plaintiff should be subject to the same relief being granted to Defendants.

## POINT I

### PLAINTIFF IS NOT ENTITLED TO EQUITABLE, INCLUDING INJUNCTIVE, RELIEF BECAUSE OF HIS UNCLEAN HANDS

The doctrine of unclean hands requires that "he who comes into equity must come with clean hands." *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 241 (1933). *See also National*

*Labor Relations Board v. Springfield Hospital,* 899 F.2d 1305 (2d Cir. 1990); *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp*. 2006 WL 3342655 (S.D.N.Y. 2006);

As the Supreme Court stated in *Keystone, supra* at 244-5,

It is a principle in chancery, that he who asks relief must have acted in good faith. The equitable powers of this court can never be exerted in behalf of oen (sic?) who has acted fraudulently, or who by deceit or any unfair means has gained an advantage. To aid a party in such a case would make this court the abetter of iniquity.

In *Springfield Hospital, supra* at 1312, the Court stated, "[i]t is well-established that courts ... apply the equitable principle that relief will not be afforded to one with unclean hands."

Although no allegation is made that Defendants' counsel directly communicated with Defendants' employees, Plaintiff seeks to enjoin and sanction Defendants and/or their counsel for having communicated with Defendants' own employees regarding their intent to join the class in this action.

However, Plaintiff may not receive the relief sought by him because he is guilty of unclean hands for having participated in the same type of alleged improper communication with Defendants' employees. In or about August 2007 and soon after this action was commenced, Plaintiff contacted Mr. Ghazali, one of Defendant GHT Petroleum, Inc.'s employees, and attempted to convince him to join Plaintiff as a class member pursuing this action.

Moreover, Plaintiff continues to influence putative class members by communicating to them the offers of settlement which he has received, and which they too could receive if they joined this action.

Although Plaintiff claims that Defendants' conduct was improper, even if this be the case, the fact remains that Plaintiff's conduct necessarily must have been improper as well.

7

Moreover, under the circumstances, Plaintiff's conduct must have been more susceptible to abuse. The contact between Plaintiff and Mr. Ghazali was less likely to comply with the safeguards which Plaintiff's attorney claims to be necessary to assure that Mr. Ghazali was not induced by coercion or by misleading information.

Whereas Plaintiff, as a store cashier, had little or no apparent knowledge regarding the need to assure propriety in his communications with Mr. Ghazali, Defendants assured propriety by providing its employees, incidental to providing the subject Affidavit, with the very same Notice of Lawsuit with Opportunity to Join which Plaintiff's attorneys seek to send to those employees anyway. In fact, Plaintiff's attorney admitted that the Notice provided to the affiants is of a type previously approved by the Court and, therefore, not misleading.

As such, when Defendants provided their employees with the Affidavit in issue herein, they also were provided with Plaintiff's proposed Notice containing the same recitation of employee rights which Plaintiff deemed to be necessary in order to assure that coercion and misleading information would not occur.

In order to apply the doctrine of unclean hands, the "unconscionable act of one coming for relief [must have] some immediate and necessary relation to the equity that he seeks in respect of the matter in litigation." *Id*. at 245. However, that requirement certainly is satisfied herein.

Plaintiff's communications which attempted to solicit Mr. Ghazali as a class member are immediately and necessarily related to the relief sought by Plaintiff herein, since Plaintiff's communications with Mr. Ghazali provided the genesis for Defendants' communications with its employees. But for Plaintiff's communication with Mr. Ghazali, Defendants would not have been

prompted to contact their employees to determine their intentions in this action or to determine who, besides Mr. Ghazali, had been solicited by Plaintiff.

Furthermore, but for Plaintiff's communication with Mr. Ghazali, a source of dialogue among the employees conceivably would not have been created.   Having been contacted and solicited by Plaintiff, and having rejected Plaintiff's solicitation, Mr. Ghazali was free to discuss this contact with fellow employees and was free to communicate to those employees his predisposition against joining Plaintiff's purported class, as he apparently has done with another putative class member, Mr. Abdel-Hafez, and conceivably with other class members (whether directly or indirectly).

In light of the fact that Plaintiff seeks various forms of equitable relief and sanctions against Defendants for the very same conduct of which he also is guilty, Plaintiff comes to this Corut with unclean hands and he is not entitled to the equitable relief sought by him herein.  *See e.g. Intershoe, Inc. v. Filanto S.P.A.*, 97 F.Supp.2d 471 (S.D.N.Y. 2000); *Estate of Lennon v. Screen Creations, Ltd.*, 939 F.Supp. 287 (S.D.N.Y. 1996).

## POINT II

## DEFENDANTS' PRE-CLASS CERTIFICATION COMMUNICATION WITH THEIR EMPLOYEES WAS NOT IMPERMISSIBLE

In *Gulf Oil Company v. Bernard*, 452 U.S. 89 (1981), the Court addressed the circumstances when free speech could be restrained by pre-certification limitations on communications.   In reviewing a limitation on communications, the *Bernard* Court stated at 102,

> 'To the extent that the district court is empowered ... to restrict certain communications in order to prevent frustration of the policies of Rule 23, it may not exercise the power without a specific record showing by the moving party of the particular abuses by which it is threatened.'

9

Cases which have followed *Bernard* generally have permitted pre-certification communications between Defendants and their employees, provided they do not undermine or contradict the Court's notices, and provided they are not otherwise misleading or coercive.

In *Parks v. Eastwood Insurance Services, Inc*., 235 F.Supp.2d 1082, 1084 (D.C.Cal. 2002), the Court stated,

> In a Rule 23 class action, pre-certification communication from the defense to prospective plaintiffs is generally permitted.  The law is not settled on this issue, but the majority view seems to be against a ban on pre-certification communication between Defendant and potential class members.  The Second Circuit, state and federal district court in California, and a leading treatise conclude Rule 23 pre-certification communication is permissible because no attorney client relationship yet exists." (citing to *Weight Watchers of Philadelphia, Inc. v. Weight Watchers Int'l, Inc*., 455 F.2d 770, 773 (2d Cir. 1972)).

*Park* apparently relied upon that portion of *Weight Watchers, supra*, which deemed it permissible for a defendant's counsel to communicate with putative class members to settle potentially spurious claims brought on their behalf.

In *Parks*, the Court also concluded that a communication under the FLSA is permissible before a member opts-in unless the notice "undermines or contradicts the Court's notice."  *Id*. at 1085.

Likewise, in *Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193, 1202 (11th Cir. 1985), the Court concluded that a party's pre-certification contacts with putative class members were permissible unless the defendant exploited a position of dominance or gave false or misleading information in an attempt to dissuade putative class members from participating in a pending class action.  *See also In Re Currency Conversion Fee Antitrust Litigation,* 361 F.Supp.2d 237 (S.D.N.Y. 2005)(which is cited by Plaintiff).

Any contacts with putative class members must be "straightforward, accurate, and free of omissions." *Rubery v. Buth-Na-Bodhaige, Inc.*, 2007 W.L. 2874487 (W.D.N.Y. 2007).

However, in the instant case, there is no evidence that Defendants provided false or misleading information to the putative class members in order to induce them to sign the Affidavit in issue herein, nor is there any evidence that they provided a communication contemplated to conflict with notices from this Court.

Instead, with the Affidavit ultimately signed by the putative class members, Defendants provided the exact Notice which Plaintiff proposed for distribution to those putative class members and which Plaintiff anticipated would be acceptable to the Court.

For this reason, Plaintiff's reliance upon *Belt v. Emcare, Inc.*, 299 F.Supp.2d 664 (E.D.Tx. 2003) and upon *In Re Currency Conversion Fee Antitrust Litigation*, *supra*, is misplaced. While those cases prohibited dissemination of misleading information to putative class members, the only information disseminated by Defendants to the putative class members was contained in the proposed Notice which Plaintiff's attorney drafted and which Plaintiff cannot (and does not) claim to be misleading.

Moreover, Defendants did not need to influence the putative class members to sign the Affidavit, since it already was known that they would not opt-in. Many of those putative class members were relatives and/or friends of the Defendants and would not sue Defendants under any circumstances and the other putative class members already had decided not to join the class, as Plaintiff himself found out when Mr. Ghazali rejected Plaintiff's unsolicited overtures to opt-in to the class (without Defendants present).

As a further protection against potential coercion, the proposed Notice, which all the affiants acknowledged having read, specifically disclosed that Defendants could not seek retribution against them or their employment if they opted-in.  The Notice states, "If you are currently employed by GHT Petroleum, Inc. Golden Touch Gas & Food, Inc., Tarlok Singh, or Harinder Singh, your participation in this collective action will have NO IMPACT WHATSOEVER on your employment. Both state and federal law prohibit any type of discrimination or retaliation if you choose to participate in this action or decide not to participate"  (Notice, ¶1) The pertinent language in the Notice appears not once, but twice - in ¶1 and, in revised form, in  ¶2 of the proposed Notice.

In light of the foregoing, contrary to Plaintiff's assertions, there is nothing in this record to indicate that the Affidavit signed by the putative class members was induced through misleading information or through coercion.

## POINT III

**THE RELIEF SOUGHT BY PLAINTIFF IS FAR IN EXCESS OF THAT NECESSARY TO REMEDY ANY HARM CAUSED TO THE PUTATIVE CLASS MEMBERS BY THE CONDUCT OF PLAINTIFF AND DEFENDANTS**

The District Courts clearly have broad authority to supervise class actions and F.R.C.P. 23(d) provides the Court with authority to issue appropriate orders "for the protection of the members of the class or otherwise for the fair conduct of the action," among other things.  *See* F.R.C.P. 23(d). *See also Bernard, supra*; *In Re Initial Public Offering Securities Litigation,* 499 F.Supp.2d 415 (S.D.N.Y. 2007); *In Re Currency Conversion Fee Antitrust Litigation*, 361 F.Supp.2d 237 (S.D.N.Y. 2005).

a)      **Any Restrictions On Communications Must Apply Equally To Plaintiff And Must Account For The Interpersonal Relationship Between Defendants And Many Of Their Employees**

12

In *Bernard, supra* at 102, the Supreme Court stated that, when considering appropriate limitations on communications between the parties and putative class members,

> 'the district court must find that the showing provides a
> satisfactory basis for relief and that the relief sought would be
> consistent with the policies of Rule 23 giving explicit consideration
> to the **narrowest possible relief** which would protect the respective parties.'
> (boldface added for emphasis)

Consistent with its directive that the District Court provide the "narrowest possible relief," the *Bernard* Court also cautioned against imposing a "sweeping restraint order" enjoining all communications concerning a case, such as Plaintiff seeks herein.   Plaintiff herein seeks to prohibit Defendants from discussing any aspect of this case with putative class members irregardless of their relationship to Defendants as spouses, friends, etc., irregardless of whether they ultimately opt in or out of this action, and irregardless of whether they have potential evidence relevant to the propriety of Plaintiff's claim.

Plaintiff's application to restrict communications between Defendants and the putative class members completely ignores the close daily working relationship between Defendants and their employees and completely ignores the interpersonal relationships between Defendants and most of their employees.

Plaintiff's application also completely ignores Plaintiff's role in influencing the putative class members through unsolicited attempts to have them opt in and through continuous communication with putative class members regarding the windfall they stand to receive if they join this action.

As a result, it is submitted that any order which restrains communications with the putative class members must also apply equally to Plaintiff and must account both for the interpersonal

13

relationship between Defendants and most of the putative class members and for the ongoing working relationship existing between Defendants and the putative class members.

      **b)**      **The Relief Sought By Plaintiff Is Unnecessary, Over-Reaching, and Premature, Since That Relief Can Be Obviated By Adding Appropriate Language To The Opt-In Notice**

The broad and over-reaching relief sought by Plaintiff is not warranted or necessary, since curative language in the Opt In Notice ultimately approved by this Court could remedy the parties' concerns and since it cannot be known which, if either, of the parties influenced the putative class members or the extent to which they did so.

Nonetheless, in order to address Plaintiff's concern that putative class members might have been motivated by coercion, or fear that they would lose their employment, the Notice ultimately approved by the Court could contain language (as has already been proposed by Plaintiff) informing putative class members that no retribution may be sought by Defendants if they join the class.  In fact, this language already appeared in the Notice attached to the subject Affidavit and read by the employees who signed the Affidavit.

In addition, the Notice ultimately approved by the Court could contain language drafted to advise putative class members that any prior communication from *either* party might have been misleading, coercive, or improper and, therefore, may (or should) be disregarded.

Furthermore, in order to address Plaintiff's concern that putative class members might view the Affidavit as a waiver of their individual rights to join the class, and vice versa, the Notice ultimately approved by the Court could contain language informing putative class members that no prior agreement or understanding with either party is enforceable to prevent or mandate joinder in the class, including the Affidavit in issue herein.

14

In light of the foregoing, it is submitted that the Court can satisfy the directives of *Bernard*, without the broad restraint on communication sought by Plaintiff, merely by providing appropriate language in the opt-in notice ultimately approved by the Court.

Aside from the foregoing, Plaintiff has not demonstrated a need for any of the other relief sought by him.

Plaintiff has not demonstrated the need for discovery of "all participants in the defendants' securing of signatures on the Affidavit by deposition conducted at defendants' expense," since no evidence exists that the putative class members were misled or coerced by Defendants, rather than Plaintiff.  Indeed, any misleading information obtained by the putative class members could have been provided by Plaintiff.

Moreover, no evidence exists that the putative class members were coerced or promised anything for their signatures on the Affidavit.

In fact, Plaintiff's application for discovery of the putative class members is premature insofar as the Opt In Notices have not even been provided to any of the putative class members to determine whether or not they will opt in or out of this action.   Certainly, the Opt In Notices should be sent to the putative class members before embarking upon extensive discovery involving those members.    It makes little sense to depose Defendants' employees regarding their failure to opt in unless and until they have actually failed to opt in.

It also makes little sense to depose all of Defendants' employees when it may ultimately be determined that some or all of those employees are not similarly situated to Plaintiff, a defense which has been alleged by Defendants in their Answer.

In any event, Plaintiff must be held strictly responsible for his own legal fees, since he must be held equally accountable for his unclean hands and for his role in unsupervised efforts to solicit putative class members to opt in and in influencing the putative class members.

Furthermore, because most of the class members are acknowledged to be friends, relatives, or social acquaintances of Defendants, these putative class members must be exempt from any discovery, since they would not be expected to opt in as parties to a lawsuit against Defendants in any event.

In light of the foregoing, the relief sought by Plaintiffs is not warranted and curative language in the Opt In Notice approved by this Court would be sufficient, under the circumstances.

## POINT III

## PLAINTIFF IS NOT ENTITLED TO SANCTIONS

The granting of sanctions is a severe remedy and must be imposed with restraint and discretion. *Schlaifer Nance & Company, Inc. v. Estate Of Warhol*, 194 F.3d 323 (2d Cir. 1999).

In determining the propriety of sanctions in an individual case, a Court must determine, among other things, that the claim was brought in bad faith, i.e. motivated by improper purposes such as harassment or delay, and that the equities warrant imposition of sanctions. *Id.*

None of these conditions for awarding sanctions exists in the present case.

**a)     The Equities Do Not Favor Imposing Sanctions**

Although the *Warhol* Court did not directly address the equities in rendering its decision, it failed to do so expressly because it already had found that other grounds were not present. The Court stated, "[a]lthough in light of our disposition of this appeal, we need not address whether such

unclean hands may preclude imposition of sanctions, we observe that a court considering sanctions can and should consider the equities involved before rendering a decision." *Id.* at 341.

As noted above, however, Plaintiff is prevented from obtaining the relief sought by him because of his own unclean hands, in having initiated exactly the same conduct for which seeks sanctions against Defendants, i.e. communications with the putative class members concerning their decision to opt in to this action.

In light of the foregoing, Plaintiff's unclean hands prevents him from obtaining sanctions.

**b)     Defendants Have Not Evidenced Bad Faith Supporting Sanctions**

As is discussed *supra*, the case law permits communications with putative class members as long as the communications are not misleading or coercive.  However, as also is discussed *supra*, Defendants did not communicate with the putative class members in a misleading or coercive manner and, therefore, had a good faith reason to believe that their conduct was permissible under the circumstances.

Although Plaintiff fails to annex to his moving papers a copy of his proposed Notice of Lawsuit With Opportunity To Join, that Notice is prominently identified in the Affidavit in issue herein as having been annexed to the Affidavit signed by some of the putative class members and as having been read by each of the affiants, and a copy of the complete Affidavit, with Plaintiff's proposed Opt-In Notice, is annexed to the within opposition papers as Exhibit "A."

That Defendants deigned it necessary and advisable to annex Plaintiff's own proposed Notice to the Affidavit is conclusive evidence that they did not intend to mislead the putative class members, that they did not intend to coerce the putative class members, and, therefore, that they did not proceed in bad faith.

By attaching Plaintiff's own proposed Opt In Notice to the affidavit, Defendants evidenced their intent to provide the class members with the same purportedly accurate information, which Plaintiff sought to provide them and which Plaintiff's own attorney believed this Court would approve.

Moreover, by attaching Plaintiff's own proposed Opt In Notice to the Affidavit, Defendants evidenced their intent not to coerce the class members to sign the Affidavit, since the proposed Notice expressly advised putative class members that the class members could not be punished by Defendants for opting in - both in ¶¶'s 1 and 2 of that Opt In Notice.

Lastly, the Affidavit clearly was intended as an expression of the intentions of the putative class members and not a waiver of their rights.  The language of the Affidavit indicates "[u]nder no circumstances will we join."   The Affidavit does not indicate "[u]nder no circumstances can we join" or "we waive our right to join," nor does the Affidavit indicate that any of the putative class members is bound by their expression of intent.

Certainly, the case law confirms that such a waiver is not permissible and is void as a matter of law in any event.

**c) The Case Law Cited By Plaintiff In Support Of Sanctions Is Inapplicable**

Plaintiff relies heavily upon *Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985), for its contention that sanctions are warranted in this instance.  Plaintiff's reliance upon *Kleiner* is misplaced.

In *Kleiner,* the Court had "twice over issued orders directing counsel for the Bank to refrain from contacting the plaintiff class," which counsel knew about, but nonetheless counseled his client

18

to ignore. *Id*. at 1207. It was the disobedience of these two orders which the Court found to merit sanctions, as follows:

> According to appellants, sanctions must not issue because their advice, however mistaken, was given in good faith. Observing that a lawyer may counsel or assist a client's good faith efforts to test the validity of a law in good conscience, they maintain that a lawyer who counsel disobedience to a standing order of the court stands firmly within ethical bounds.
>
> The inevitable result of this position would be to cripple orderly processes of trial and appeal on which enforcement of the laws depends. As a fundamental proposition, orders of the court, 'must be obeyed until reversed by orderly review or disrobed of authority by delay or frustration in the appellate process...'.

*Id*. at 1207-8.

However, no Order has been entered herein with respect to contact with the putative class and Plaintiff does not even allege the existence of an Order. As such, Defendants clearly have not violated an Order of this Court and, therefore, *Kleiner* is inapplicable.

Plaintiff also relies upon *Belt v. Emcare*, 299 F.Supp.2d 664 (E.D.TX. 2003). However, as is discussed above, Plaintiff's reliance upon *Belt* also is misplaced because the determination therein was based upon misleading information contained in a letter sent by Defendants to the putative class members. That letter "mischaracterized the suit as an attack on the absent class members' status as 'professionals' in the workplace ... mischaracterized the damages available to the putative class by ignoring statutory liquidated damages ... and represented that attorney's fees would be deducted from any recovery when attorney's fees are available as a separate element of damage."

However, nothing in the notice provided by Defendants to the putative class members can be deemed misleading. The notice sent by Defendants did not characterize any aspect of the case, but merely left the characterization of the case to the Opt In Notice proposed by Plaintiff.

In light of the foregoing, Defendants did not mischaracterize the nature of this lawsuit and *Belt* is inapplicable as a result.

## CONCLUSION

Because Plaintiff has participated in unsupervised solicitations of Defendants' employees for the purpose of inducing them to opt in to Plaintiff's class herein and clearly has influenced putative class members through regular case status reports detailing the monetary benefits of suing the Defendants herein, Plaintiff is guilty of the same conduct which he claims warrants sanctions against Defendants and he comes to this Court with unclean hands. For this reason, Plaintiff's motion herein must be denied.

In addition, Plaintiff's motion herein must be denied because any and all of the concerns raised by Plaintiff to communications with the putative class members, whether communicated to them by Plaintiff or Defendants, may addressed through curative language included in the Opt In Notice ultimately approved by the Court for distribution to the putative class members.

In the alternative, if Plaintiff is entitled to any relief, that relief must be subject to Defendants receiving the same relief, so that Plaintiff is held accountable for his extensive and repeated efforts to influence the putative class herein.

**WHEREFORE**, it respectfully is requested that the Court deny Plaintiff's application in all respects and grant such other and further relief as the Court shall deem just, fair, and equitable.

Dated: Chester, New York
        November 13, 2007


/s/ Gary Greenwald
GARY GREENWALD
[GG 4605]