IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MOHAMED ELMESHAD, individually and on behalf of others similarly situated, | : : : | |
| Plaintiffs, | : : | |
| v. | : : | 07-CIV-5990 (CLB)(LMS) |
| GHT PETROLEUM, INC., GOLDEN TOUCH GAS & FOOD, INC., TARLOK SINGH, and HARINDER SINGH, | : : : : : | |
| Defendants. | : | |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION**

Respectfully Submitted

by

Matt Dunn (MD1103)
Dan Getman (DG4613)
Getman Law Office
9 Paradies Lane
New Paltz, NY 12561
(845) 255-9370

COUNSEL FOR PLAINTIFFS

**INTRODUCTION**

The Defendants improperly communicated with potential class members regarding this pending Fair Labor Standards Act (FLSA) case. By using the position of employer, Defendants secured class members' public oath never to join this case. These actions were inherently coercive. Misleading and coercive communications by defense counsel and a defendant, used to secure class members' decision to forswear their rights are contrary to the remedial purposes of the FLSA, and defeat this Court's role in supervising the collective action opt in provisions of the FLSA. Defendants should be held accountable and should not be permitted to prosper by their improper actions.

Defendants make two basic arguments to justify their conduct. First, they argue that Plaintiff spoke with his former coworker first. However, plaintiff is entitled to speak with his co-coworker as long as the communication is not abusive or unethical. There is absolutely no prohibition on plaintiffs' conduct in this regard, as there is on defendants. Plaintiff does not have "unclean hands" in any respect.

Second, defendants argue that some portion of the class is made up of their family and social acquaintances who would not join this case against them anyway. If that were the case, however, there would be no good reason to secure an affidavit to that effect. Defendant could simply consent to the mailing of the notice and await the allegedly foregone conclusion – that nobody joins the case. That defendants may have had some unspecified "social" interaction with an employee, does not permit having the employers' lawyer draft an affidavit to insulate the employer from liability for wrongly withholding wages. Nor does Mr. Singh's claim that some class members are part of the same "close knit Indian community" permit defendants to require

such employees to issue a public oath never to sue other members of the community. Finally, none of this can justify communication by defendant with the remainder of the class <u>about the issues in this lawsuit</u>.

Defendants violated the law, intentionally defeated this Court's jurisdiction to supervise notice and have tainted the process so severely that it will likely never be possible to determine if a class member acts freely and voluntarily in deciding whether or not to join this case. That is unfortunately exactly what defendants hoped to achieve.

## POINT ONE

### PLAINTIFF MAY SPEAK WITH HIS FORMER CO-WORKER CONCERNING THIS CASE.

The First Amendment allows plaintiffs to communicate with other potential class members, including current or former employees. *See Dziennik v. Sealift, Inc*, 2006 WL 1455464 (E.D.N.Y. 2006)(Go., J.); *Rubery v. Buth-Na-Bodhaige Inc.*, 2007 WL 2874487, *2 (W.D.N.Y. 2007). It is only when those communications become misleading or coercive that the Court may take corrective action to prevent illicit behavior. *See Hoffman-LaRoche v. Sperling*, 493 U.S. 165 (1989); *EEOC v. Morgan Stanley & Co., Inc.,* 206 F.Supp.2d 559, 562 (S.D.N.Y. 2002) (Ellis, Magistrate Judge)*; Belt v. Emcare*, 299 F. Supp. 2d 664 (W.D. Tex 2004)*.*

Defendants' argument that plaintiffs' speaking with a co-worker shows "unclean hands" is entirely false. Defendants did not cite any cases which hold that a Plaintiff is prevented from communicating with other potential class members. Nor did they cite any cases which indicate that a Plaintiff's interaction with other class members is inherently coercive. Instead they argue that Plaintiff's communications with one class member about the case in July of this year was

2

impermissible. They also argue that plaintiff's communication to a class member about the Offer of Judgment was somehow improper, even though <u>defendants themselves made that Offer part of the Court's public record</u>. *See Docket of this case.* However, there is no case holding such communication between co-workers to be improper. Defendants' arguments that Plaintiff has "unclean hands" is simply not supported and is unsupportable.

Defendants' conclusion from its erroneous premise -- that because of Plaintiff's legal actions, that it had to act to circumvent additional people from joining this case in a legally impermissible way – fails to insulate defendants' conduct. Defendant argues that Plaintiff is guilty of the "very same conduct" it did. However, unlike Defendants, plaintiff is not an employer communicating in an inherently coercive manner. Defendants has not alleged any coercive communications to class members by Plaintiff or Plaintiff's counsel. Further, there is no allegation of misleading communications that "pose a serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice." *Dziennik v. Sealift, Inc*, 2006 WL 1455464, *3 (E.D.N.Y. 2006)("Here, defendants have failed to establish that plaintiffs are engaged in any abusive or unethical communications with absent class members. As a preliminary matter, plaintiffs generally have a right to contact members of the putative class.") also quoting *In re School of Asbestos Litig.*, 842 F.2d 671, 683 (3rd Cir. 1988). And unlike Defendants, Plaintiff did not secure statements sworn under the penalty of perjury which were against the class members' legal interests..

Moreover, Plaintiff's actions are consistent with the purposes of the Fair Labor Standards Act. "The principal congressional purpose in enacting the FLSA was to protect all covered workers from substandard wages and oppressive working hours. . . . [and to ensure that

3

employees] would be protected from the evil of 'overwork' as well as 'underpay.'" *Barrentine v. Arkansas Best Freight System, Inc.,* 101 S.Ct. 1437, at 1444 (1981)(citations omitted). To protect against excessive hours of work, the statute requires that employers pay employees for hours in excess of 40 in a week "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The FLSA was designed "'to extend the frontiers of social progress' by 'insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.' ... Any exemption from such humanitarian and remedial legislation must therefore be narrowly construed, giving due regard to the plain meaning of statutory language and the intent of Congress. " *A.H. Phillips v. Walling,* 65 S.Ct. 807, at 808 (1945). The FLSA's overtime rules, "like the other portions of the Fair Labor Standards Act, are remedial and humanitarian in purpose. Such a statute must not be interpreted or applied in a narrow, grudging manner." *Giles v. City of New York*, 41 F.Supp.2d 308, 316 (S.D.N.Y. 1999)(quoting *Tenn. Coal, Iron & R.R. Co., et al. v. Muscoda Local No. 123, et al.*, 64 S.Ct. 698 (1944)).

     Plaintiff alleges that he was not paid time and one-half for hours worked over 40 in a work week. He also alleges that he was not paid the prevailing minimum wage. Other similarly situated class members should also be able to recover unpaid and underpaid wages. By informing potential class members of his FLSA claim Plaintiff is allowing litigation to be consolidated and cost effective, which precisely conforms to the purposes of the FLSA.

     Plaintiffs' legal and permissible contact with a former co-worker does not justify or permit defendants' inherently coercive and misleading communications concerning this litigation to the class.

**POINT TWO**

4

## DEFENDANTS ADMIT THEIR ACTIONS WERE IMPROPER.

The Defendants do not deny the legal standards that is to be applied.  The Defendants do not dispute that it is the Court's duty to safeguard the rights of potential class members.  *See Hoffman-LaRoche v. Sperling*, 493 U.S. 165 (1989); *Belt v. Emcare,* 299 F.Supp.2d 664 (W.D.Tex. 2004).  They do not deny that an employer's communications regarding a pending FLSA claim with potential class members is inherently coercive. *Bragg v. Terrier Claims Services, Inc., et al.,* 05 Civ 7280 (S.D.N.Y. 2005)(McMahon, J.).  Indeed Defendants admit communications with potential class members is impermissible when the employer exploited a position of dominance.  *See Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193, 1202 (11th Cir. 1985).

Courts in this District and around the Country have noted the inherently coercive nature of an employer's communication with employees urging them not to sue it. *EEOC v. Morgan Stanley & Co., Inc.,* 206 F.Supp.2d 559, 562 (S.D.N.Y. 2002)

> Coercion of potential class members by the class opponent may exist if both parties are "involved in an ongoing business relationship." *Ralph Oldsmobile, Inc. v. General Motors Corp.*, 2001 WL 1035132, at *3 (S.D.N.Y. Sept.7, 2001) ( *quoting Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1202 (11th Cir.1985)). Courts have found the danger of such coercion between employers and employees sufficient to warrant the imposition of restrictions regarding communication between defendants and potential class members. *See, e.g., Bublitz v. E.I. duPont de Nemours & Co.*, 196 F.R.D. 545, 547 (S.D.Iowa 2000); *Abdallah v. Coca-Cola Co.*, 186 F.R.D. 672, 678-79 (N.D.Ga.1999); *EEOC. v. Mitsubishi Motor Mfg. of America, Inc*., 960 F.Supp. 164, 168 (C.D.Ill.1997).

*See also Bragg v. Terrier Claims Services, Inc., et al.*, 05 Civ. 7280, at 9:10-20 (McMahon, Judge, Nov. 18, 2005)(employer communications with putative class members about pending FLSA lawsuit is prohibited as "inherently coercive"). *See also Belt v. Emcare*, 299 F. Supp. 2d

664 (W.D. Tex 2004), *Bower v. Bunker Hill Co.*, 689 F.Supp. 1032, 1033 (E.D.Wash.1985).

Defendants numerous interactions with putative class members not only impinged upon the Court's duty to authorize notice to potential class members but the Defendants also utilized its inherently coercive power to convince class members to sign statements against their interest. Defendants do not deny that the "affidavit" was drawn up by defense counsel, that it was pre-signed by the defendants themselves and then circulated one at a time to members of the class. Further, the "affidavit" as a legal form which by its own terms makes the class members swear a personal "oath" never to sue the defendants. Defendants' actions are coercive for numerous reasons. Defendants admit that they individually contacted and secured sworn statements by potential class members. By individually contacting each potential class member Defendants parlayed their inherent position of dominance, power, and coercion. Each potential class member would have clearly seen the other sworn signatures including those of their employers therefore likely influencing their decision to sign such a statement The fact that the employer signed the form, then circulated the form to employees individually makes it abundantly clear what the employer's wishes in the situation were: that the employee agree never to sue the employer. The threat implied in displeasing the employer may or may not have been explicit – that the employees' job would be in jeopardy by joining the case, but an explicit threat is not needed here to convey what the employer wishes. The gas station cashiers here were presented with an inherently coercive document and asked to sign. These employees have now been coerced to signing the sworn statement "under penalty of perjury" that they will never join this case.

Defendants admit that they asked defense counsel draft the sworn affidavit and that

counsel did so. That affidavit was circulated by defendants.[1] Defendants' counsel had further communications with class member Ghazali to draft the affidavit used in the responsive papers, further tainting the process.[2]

Defendants motives are also improper. Defendants state that they contacted class members to force Plaintiff to settle this case. *Singh Dec. ¶ 34.* Defendants admit that they are attempting to use other potential class members sworn statements to force Plaintiff to settle for less than what Plaintiff proposed and potentially due to Plaintiff for the long hours that he worked. *Singh Affidvait* at ¶34. However, it seems more likely that the purpose was exactly what was stated in the affidavit: to coerce each class member to swear a public oath never to sue the defendants for overtime.

Defendants' affidavit is also "misleading" insofar as it fails to disclose to plaintiffs that FLSA rights are unwaivable. Settlements of FLSA rights are illegal and void and solicitation of such waivers is sanctionable. *See Ladegaard v. Hard Rock Concrete Cutters, Inc.,* 2001 WL 1403007 at *2, *7 (N.D. Ill. 2001) (voiding releases that the employer obtained from potential FLSA class members and ordering remedial notice sent to potential class members); *O'Brien v. Encotech Constr. Services, Inc.,* 203 F.R.D. 346, 348 (N.D. Ill. 2001) (after employer offered employees additional compensation in exchange for an FLSA release, court enjoined defendant

---

[1]"An attorney cannot circumvent Disciplinary Rules by requesting or engineering an action be taken by another that, if performed by the lawyer, would violate the Disciplinary Rules." *Realuyo v. Diaz*, 2006 WL 695683, at *12 (S.D.N.Y. March 17, 2006).

[2]An attorney with defense counsel's law firm notarized Haisam S. Ghazali's signature and presumably prepared the affidavit. *See* Attorney Profile, Greenwald Law Office <http://www.greenwaldlaw.com/Bio/RobertNoe.asp> (Nov. 15, 2007).

from soliciting further releases, declared the releases that had been signed void, and ordered corrective notice informing employees that they retain their right to sue under the FLSA). *Id.* at 348-349. See also, *Walton v. United Consumers Club Inc.,* 786 F.2d 303, 306 (7th Cir. 1986)("it is necessary to ban private settlements of disputes about pay . . . [o]therwise the parties' ability to settle disputes would allow them to establish sub-minimum wages."); *Lynn's Food Stores, Inc. v. U.S.,* 679 F.2d 1350, 1352-1353 (11th Cir. 1982)("to approve an "agreement" between an employer and employees outside of the adversarial context of a lawsuit brought by the employees would be in clear derogation of the letter and spirit of the FLSA"); *Caserta v. Home Lines Agency, Inc.,* 273 F.2d 943, 946 (2nd Cir. 1959) ("an express release by the employee is invalid, and this even though the release is limited to the claims for liquidated damages and was made in settlement of a bona fide dispute"). Defendants here did not inform the class that its rights were unwaivable, it merely secured a public oath never to sue on a legal form prepared by defense counsel. By securing a public oath under penalty of perjury is inherently misleading when such oath could never be enforced "under penalty of perjury."

The affidavit was inherently misleading and inherently coercive.

**CONCLUSION**

Defendants have unlawfully tainted the collective action procedures by engaging in coercive and misleading communications with the class. Defendants did so to circumvent the remedial purposes of the FLSA and the Court's ability to regulate the form of notice to potential class members. Defendants improperly communicated with potential class members regarding this case, and used their position of power to secure statements promising not to the join the case. This Court should prohibit further similar conduct and fully remedy defendants' efforts to

8

subvert the FLSA collective action process.


Dated: November 15, 2007
     New Paltz, New York


Respectfully submitted,


S/ Dan Getman


Dan Getman (DG4613)
Matt Dunn (MD1103)
Getman Law Office
9 Paradies Lane
New Paltz, NY 12561
(845) 255-9370

COUNSEL FOR PLAINTIFFS